

**VIA ECF**
Honorable Lee Dunst
United States District Court
Eastern District of New York
Via ECF

     Re:    Villavicencio v. Brandon Adam Security Services, Inc. 2:23-cv-06567-NJC-LGD

Your Honor,

This firm represents plaintiff Villavicencio ("Plaintiff") in the above-referenced matter. Plaintiff writes jointly with defendants 2:23-6567-NJC-LGD Villavicencio v. Brandon Adam Security Services, Inc ("Defendants") (Plaintiff and Defendants collectively referred to as the "Parties") to request Court approval of their settlement agreement (the "Agreement"), annexed hereto as Exhibit A, pursuant to *Cheeks v. Freeport Pancake House*, Inc., 796 F.3d 199 (2d Cir. 2015).

This letter will provide support for the Parties' fair and reasonable settlement sum of ($15,000) Fifteen Thousand Dollars, taking into account the potential risks and substantial expenses that could have been incurred by both parties if the matter proceeded to litigation. It will also provide the Court with the required information regarding Plaintiff's attorneys' fees so that the Court can determine whether the requested award of $5,486.50 in fees and costs is fair and reasonable.

With the assistance of Jim Brown an EDNY Mediator, the parties were able to reach this settlement. In addition, this Agreement represents a good faith effort between experienced labor and employment counsel to negotiate an action under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), resulting in a settlement that provides Plaintiff with a satisfactory recovery of his damages under applicable law. The Parties have determined that their interests are best served by compromise, settlement, and dismissal of these claims with prejudice, in exchange for consideration as set forth in the Agreement. Thus, the settlement satisfactorily resolves the Parties' *bona fide* dispute.

For these reasons and based on the reasons set forth below, the Parties jointly and respectfully request that that Court enter an Order approving the Agreement as fair and reasonable.

**Plaintiff's Allegations and Defendant's Responses**

On September 1, 2023 Plaintiff, represented by counsel, commenced a wage and hour lawsuit against Defendant (the "Complaint"). The Complaint alleges that Defendants violated the FLSA and NYLL. Specifically, Plaintiff alleges that he worked for Defendants from October 2022 until July 2023. He alleges that the entire time he worked for Defendants he worked 80 hours per week, or double shifts and was paid $1600 per week. On behalf of Plaintiff, we calculated his maximum recover to be $42,800.

**Defendants:**

Defendants deny the allegations in Plaintiff's Complaint. Defendants specifically deny any potential liability and disputes Plaintiff's claimed days and hours worked and the amount of purported damages listed in Plaintiff's calculation.

During the course of this action, Defendants produced time records reflecting Plaintiff working hours and the amount of compensation he received. Assuming that Defendants' time and pay records are accurate, Plaintiff was sufficiently paid.

Although there is a bona fide dispute between the parties as to the merits of Plaintiff's wage and hour claims, Defendants agreed to pay Plaintiff more than they believe is due under the law. Both parties have agreed to settle due to strategic considerations, including the avoidance of a protracted legal battle, and financial considerations, such as the high cost of litigation, potential adverse judgment, and further damage to their financial position and reputation.

In sum, there is a bona fide dispute between the Parties regarding the merits of Plaintiff's wage and hour claims. The instant settlement constitutes the Parties' effort to resolve same in an amicable fashion through arm's length bargaining and without resort to protracted litigation.

**I.     The Settlement is Fair and Reasonable**

The Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 2015 WL 4664283 (2d Cir. 2015) provides that stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the Department of Labor. An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the Parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc.*, No. 11–0529–WS–B, 2013 WL 593500, at *3 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig.*, No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-CV-86, 2008 WL

724155, at *1 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.,* 679 F.2d 1350, 1354 (11th Cir. 1982)).

  The Agreement in this matter is a fair and reasonable resolution of the bona fide disputes between the Parties. This is because the Agreement: (1) enables the Parties to avoid the possible substantial burdens and expenses of establishing their respective claims and defenses, including the costs of discovery, expert witnesses, and potential trial, and accounts for the risks in proceeding with the litigation, such as the uncertainty of a jury verdict and the potential for an appeal; and (2) is the product of arm's length bargaining between experienced labor and employment counsel which was devoid of any semblance of fraud or collusion. *See gen. Wolinsky*, 900 F. Supp. 2d at 335. Accordingly, it is respectfully requested that the Agreement be approved in its entirety.

*The Risk and Expenses Faced by the Parties*
  The parties to the case were subject to significant risks and potential expenses as they contemplated the initiation of legal proceedings. The inherent uncertainty of litigation, marked by sith unpredictable outcomes and the potential for high costs, exposed both parties to significant risks. For the Plaintiff, the risks extended beyond mere financial considerations. Emotional distress and temporal constraints were also relevant considerations. Litigation could have extended over a lengthy period, which would not only cause considerable stress and anxiety but also divert crucial time and resources from other endeavors. For the Defendants, the risks were multifaceted. This included potential financial liability and the possible damage to their reputation and business operations resulting from a lengthy legal battle. The Plaintiff's wage and hour claims could have been jeopardized if it was determined that they had received all their wages correctly and on time. Moreover, the Plaintiff faced the prospect of a protracted trial process for a relatively small amount of money. At this stage, however, the Plaintiff is reaching a near-complete recovery of the alleged FLSA unpaid wages without undergoing the time-consuming and risky procedure of litigating these claims. Conversely, while the Defendants were confident in their ability to effectively contest the Plaintiff's claims, they were also aware of the risk that the Plaintiff might have prevailed on some claims. Even if the Defendants were to emerge victorious, it would only be after prolonged litigation and at a significant cost. The litigation costs and the risk of liability for the Defendants, even if remote, favored an early resolution. As such, both parties faced substantial risks in continuing with the litigation, which substantiates the approval of the agreement.

The individuals and entity involved in this matter were both confronted with considerable risk when considering whether to proceed with the legal dispute. The decision to litigate is not one to be taken lightly. For the Plaintiff, the potential for not prevailing on their claims posed a significant risk, particularly considering the financial, emotional, and temporal costs associated with pursuing legal action. For the Defendants, the potential for a judgement against them, along with the associated financial liability and potential reputational damage, presented a substantial risk. Additionally, the cost of defending the lawsuit, both in terms of legal fees and the diversion of resources, was a considerable factor in their decision-making process. If it was found that the Plaintiff had been paid all wages correctly and in a timely manner, their wage and hour claims would have been in danger. Furthermore, the Plaintiff was faced with the possibility of a lengthy

trial process for a relatively modest sum of money. However, at this point, the Plaintiff is attaining a nearly complete recovery of their alleged FLSA unpaid wages without having to undergo the time-consuming and risky process of litigating their claims. Conversely, the Defendants, while having confidence in their ability to effectively challenge the Plaintiff's claims, were aware of the risk that the Plaintiff might have succeeded on some claims. Even if the Defendants were ultimately successful, it would have been after prolonged litigation and at a substantial cost. The litigation costs and the risk of liability for the Defendants, even if unlikely, favored early resolution. Hence, both parties were faced with significant risks in moving forward with the litigation, which supports the approval of the Agreement.

*<u>The Agreement was the Product of Arm's-Length Bargaining Devoid of Fraud or Collusion</u>*

The agreement was the result of genuine negotiations between experienced legal representatives in the field of labor and employment, and it was free from any indication of fraud or collusion. The Plaintiff's counsel vigorously advocated for their client from the outset of the case, including negotiating the settlement amount and documenting the terms of the agreement. Similarly, the Defendants' counsel worked to ensure that the settlement reached did not result in the Plaintiff receiving more than they would be entitled to if successful at trial, all while considering the high cost of lengthy litigation.

The agreement represents a concerted effort by seasoned legal representatives for both parties to resolve the dispute under the most favorable circumstances for their respective clients. Therefore, the Court should approve the agreement. Importantly, the agreement does not contain any prohibited clauses, such as a confidentiality clause, that courts have deemed inappropriate for inclusion in FLSA settlements post-Cheeks. Furthermore, the release of claims outlined in the agreement is limited to wage and hour claims only and does not constitute a prohibited general release of claims. The agreement was the outcome of genuine negotiations between experienced legal representatives in the field of labor and employment, and it was devoid of any hint of fraud or collusion.
The Plaintiff's counsel ardently advocated for their client from the beginning of the case, including negotiating the settlement amount and formalizing the terms of the agreement. Similarly, the Defendants' counsel worked to ensure that the settlement reached did not result in the Plaintiff receiving more than they would be entitled to if successful at trial, all while considering the high cost of lengthy litigation.
The agreement represents a concerted effort by seasoned legal representatives for both parties to resolve the dispute under the most favorable circumstances for their respective clients. Therefore, the Court should approve the agreement. Importantly, the agreement does not contain any prohibited clauses, such as a confidentiality clause, that courts have deemed inappropriate for inclusion in FLSA settlements post-Cheeks. Furthermore, the release of claims outlined in the agreement is limited to wage and hour claims only and does not constitute a prohibited general release of claims.

    **II.**    **<u>Plaintiff's Application for Attorney's Fees Should be Approved</u>**

Given Plaintiff's counsel's significant experience representing plaintiffs in New York in wage and hour litigation, Plaintiff obtained an excellent result with relatively small expenses. A brief biography of the attorney who performed billed work in this matter is as follows:

a. Lina Stillman, , has been practicing law since 2012. From 2012 to 2015, she was an associate at two law firms where she practiced exclusively in the areas of Labor and Employment, emphasizing wage and hour litigation. She has received several awards for her exceptional legal work and dedication to her clients. In addition to her legal practice, Ms. Stillman has contributed to the field of labor and employment law through various publications and presentations at industry conferences.
She opened her law firm in response to the immigrant community's need for honest Spanish and Portuguese-speaking attorneys to care for their interests exclusively.
She is an active member of the LGBT Rights Committee of the New York City Bar Association and active Pro Bono Counsel at the Associations Bankruptcy Clinic and the New York Chapter of the National Employment Lawyers Association.

Plaintiff's counsel seeks an award of $5,486.50 consisting of 33.33% of the total settlement plus costs of $487. Plaintiff's counsel respectfully submits that such a fee award is well within the realm of acceptable fee awards for FLSA settlements. The agreed-upon amount is fair and reasonable in light of the time, effort, and expertise dedicated to achieving this settlement.

The fee reflects the contingency arrangement entered into with the plaintiff and is commensurate with the complexity of the case, the resources invested, including the time, effort, and professional expertise dedicated to the case by Lina Stillman, an attorney with over 15 years of experience handling complex FLSA cases, along with the financial risks assumed by the plaintiff's counsel given the uncertain outcome of litigation. The successful outcome achieved is also a result of navigating through the high stakes of potential losses. The fee has been agreed upon and accepted by the plaintiff, indicating their satisfaction with the representation provided and the acknowledgment of the risks and expenses faced.

**Conclusion**

For all of the reasons above, including a thorough understanding of the substantial risks, costs and burdens associated with continued litigation that the Parties wish to avoid, we request that the Court approve the Agreement and enter the proposed Stipulation and Order of Dismissal that is being submitted simultaneously herewith, which expressly provides that the Court will retain jurisdiction over this matter solely for purposes of enforcing the Agreement. Lina Stillman, a seasoned litigator with significant experience in FLSA cases, represented the Plaintiff throughout this lawsuit, and has agreed to the settlement amount based on her client's approval, taking into account the aforesaid risks and costs.The Plaintiffs' interests have thus been adequately safeguarded, considering the complexity, potential duration and unpredictability of the litigation

process. In full consideration of all the issues, we believe that the Parties' agreement is fair and reasonable and that the settlement should be approved.

                                                           Respectfully submitted,
                                                           /s/Lina Stillman

cc:      All counsel (*via* ECF)